Meyer, J.
(dissenting). I could, perhaps, accept the majority’s rationale had the witness not clearly stated before being called to testify that he would refuse to do so and had the witness not been the victim. Because he was the victim and because the Trial Judge knew when he permitted Iovino to be called that he would refuse notwithstanding the court’s direction and admonition, I would hold it an abuse of discretion as a matter of law to permit him to be called, for the jury can have derived no other impression from the performance they witnessed than that the refusal resulted from intimidation of the victim-witness by defendants.
The question turns not alone on whether the prosecutor was guilty of misconduct; important also is whether defendant has been fairly tried. That the People had been misled by the victim’s prior professed willingness to testify into introducing evidence for which he was a necessary connection warranted an instruction to the jury, after his recalcitrance became apparent to the court, that the evidence was being stricken because the connecting witness was not available and that they should disregard the evidence and should not speculate upon the reason for his unavailability as a witness. By such an instruction the interests of the People could have been protected without giving rise to improper speculation unfair to defendants. Nothing but *301 unfair speculation could result, however, from the charade of putting Iovino on the stand only to have him adamantly defy the court.
Nor, under the circumstances of this case, can I share the majority’s faith in the curative instruction given. Learned Hand in United States v Maloney (262 F2d 535, 538), upon whose decision the majority relies, expressed doubt “whether such admonitions are not as likely to prejudice the interest of the accused as to help them, imposing, as they do, upon the jury a task beyond their powers * * * which it is for practical purposes absurd to expect of them.” He accepted the curative instruction given in Maloney only on constraint of earlier Supreme Court rulings and expressly rested his decision “upon the fact that the accredited ritual was not followed” (emphasis supplied). Justice Robert Jackson, a trial lawyer of note, concurring in Krulewitch v United States (336 US 440, 453), made indelibly clear his view: “The naive assumption that prejudicial effects can be overcome by instructions to the jury [citation omitted], all practicing lawyers know to be unmitigated fiction.”
The implication that defendants frightened Iovino into refusing to testify, like the suggestion in People v Levan (295 NY 26, 36) that Levan was an army deserter, was a “virus * * * implanted in the minds of the jury” which, in my view, a curative instruction could not extract (see, also, People v Carborano, 301 NY 39, 42). I would, therefore, affirm.
•Chief Judge Cooke and Judges Jasen, Jones and Simons concur with Judge Wachtler; Judge Meyer dissents and votes to affirm in a separate opinion.
Order reversed, etc.